David QUADE, et al., Respondents,

v.

SECURA INSURANCE, Appellant.

No. A10–0714.

Supreme Court of Minnesota.

June 12, 2012.

---

Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, MN, for Respondents.

Andrea E. Reisbord, Dawn L. Gagne, Cousineau McGuire Chartered, Minneapolis, MN, for Appellant.

## OPINION

MEYER, Justice.

This case concerns the scope of an appraisal clause in a fire and wind insurance policy, which provides that either party may demand an appraisal if the parties fail to agree on "the amount of loss." The district court ordered the parties to participate in an appraisal process, and the court of appeals reversed. We hold that the phrase "amount of loss," as it relates to the authority of the appraiser under the policy, unambiguously permits the appraiser to determine the cause of the loss. Therefore, we reverse.

On July 10, 2008, a strong windstorm caused extensive damage to buildings on the farm of respondents, David and Melinda Quade. The Quades were insured by appellant Secura Insurance under a "special farmowners protector policy" for direct physical loss to property caused by windstorms. The policy excludes damage caused by faulty or inadequate maintenance of the property. An appraisal clause in the policy provides that if the parties fail to agree on "the amount of loss," either may demand "an appraisal of the loss." The policy also sets forth the procedure for obtaining an appraisal and includes the limitation that a policyholder may not file suit against Secura unless the policyholder has complied with the policy provisions.

The Quades submitted a claim to Secura for storm damage to several buildings. Secura paid for some of the damages, but determined that damage to the roofs of three buildings—a warehouse, a horse barn, and a cow barn—resulted from "continual deterioration over a period of time rather than a specific storm occurrence." Consequently, Secura denied the claim for damage to the roofs based on the exclusion from coverage for damage caused by inadequate maintenance. Secura advised the

Quades that they should initiate an appraisal pursuant to the policy if they disagreed with the denial of the claim.

Instead of pursuing an appraisal, the Quades initiated a breach of contract action in Dakota County District Court. The Quades argued that the appraisal clause did not apply to their claim for damage to the roofs because the parties disputed whether the damage to the roofs is covered by the policy—not the cost of repairing the roofs. Secura asserted that the dispute is governed by the appraisal clause and the district court lacked jurisdiction over the matter.[1] Ultimately, the district court granted summary judgment to Secura.

The district court concluded that determining the amount of loss under the appraisal clause includes "a causation element." Therefore, the court ordered the parties to participate in the appraisal process. Although the court dismissed the Quades' complaint with prejudice, the court stated that the decision does not "prevent either party from, following the appraisal, bringing a declaratory judgment action on any coverage issue if there exists a coverage dispute at that time."

The Quades appealed, and the court of appeals reversed. The court of appeals concluded that the resolution of the Quades' claim "requires the determination of legal questions concerning the meaning and application of contract clauses, causation, and liability"; therefore, the district court erred by ordering the parties to engage in the appraisal process. *Quade v. Secura Ins.*, 792 N.W.2d 478, 483 (Minn. App.2011). We granted Secura's petition for review on the issue of whether a party may demand appraisal when the parties fail to agree on the "amount of loss" even if there are remaining coverage questions.

■■■■ The interpretation of insurance contracts is a question of law. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978). "Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts." *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Absent ambiguity, we construe contract terms consistent with "their plain, ordinary, and popular sense, so as to give effect to the intention of the parties as it appears from the entire contract." *Id.* at 294, 104 N.W.2d at 24. Although we begin with the plain and ordinary meaning of the terms, "the terms of a contract must be read in the context of the entire contract." *Emp'rs Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 282 Minn. 477, 479, 165 N.W.2d 554, 556 (1969).

■■■ The primary issue raised by the parties is the meaning of the phrase "amount of loss." Essentially, the Quades urge this court to construe the phrase "amount of loss" narrowly to mean determining the amount of money necessary to repair or replace the roofs, without determining the cause of the damage to the roofs or the amount of the "covered" loss. The Quades argue that the plain language and ordinary meaning of the appraisal provision requires the appraisers to set the amount of loss but does not empower the appraisers to determine the "cause" of the loss.

Secura contends that the Quades' argument and the court of appeals' holding

---

1. The court retained jurisdiction and ordered Secura to respond to the Quades' discovery request. The court of appeals subsequently denied Secura's request for a writ of prohibition, which sought to stop enforcement of the discovery order, noting that the insurer had not "genuinely challenged the amount of the claimed loss" and that the district court, not the appraisal process, was the appropriate forum for determining liability.

confuse the question of determining the amount of loss with the question of coverage. According to Secura, coverage questions deal with whether an event, such as a windstorm, is covered in the first instance, while the question of amount of loss relates to the damage done by the covered event and the cost to repair that damage. Secura does not contest that the policy covers wind damage and that the windstorm damaged some of the Quades' property. Secura does contest, however, the extent of the damage to the roofs caused by the windstorm. According to Secura, the extent of the wind damage is a question concerning the amount of loss and is appropriately determined in the appraisal process. Secura argues that if the Quades' position is adopted, the appraisal would become a useless process because it would not fix the amount of loss and either party could contest damages in the district court. According to Secura, such a result would contravene the express and plain language of the appraisal clause.

The parties' disagreement concerning the scope of the appraisal process focuses on the meaning of the phrase "amount of loss." After reading the appraisal clause in the context of the insurance policy as a whole, we conclude that the phrase "amount of loss" is not ambiguous, because it is susceptible to only one reasonable interpretation. Specifically, in the insurance context, an appraiser's assessment of the "amount of loss" necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss. With respect to insurance, "loss" is defined as "[t]he amount of financial detriment caused by ... an insured property's damage, *for which the insurer becomes liable*." *Black's Law Dictionary* 1030 (9th ed.2009) (emphasis added). *Merriam–Webster's Collegiate Dictionary* defines "loss" in the insurance context as "the amount of an insured's financial detriment

by death or damage *that the insurer becomes liable for.*" *Merriam–Webster's Collegiate Dictionary* 687 (10th ed.2001) (emphasis added). These definitions state that as a general matter the term "loss" refers to damages for which the insurer is responsible. Thus, the dictionary definitions of "loss" for purposes of insurance expressly contemplate an element of causation. By extension, an appraiser's duty to determine the "amount of loss" requires the appraiser to determine causation.

■■ The court of appeals based its decision on the "well established" rule under Minnesota law that "liability determinations are made by courts, not appraisers." *Quade,* 792 N.W.2d at 481. The scope of appraisal is limited to damage questions while liability questions are reserved for the courts. *See Itasca Paper Co. v. Niagara Fire Ins. Co.,* 175 Minn. 73, 77–78, 220 N.W. 425, 426–27 (1928). We generally agree that appraisers have authority to decide the "amount of loss" but may not construe the policy or decide whether the insurer should pay. *See, e.g., Mork v. Eureka–Sec. Fire & Marine Ins. Co.,* 230 Minn. 382, 384, 42 N.W.2d 33, 35 (1950); 15 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 213:44 (3d ed. 1999) ("An appraiser can make no legal determinations."). But the line between liability and damage questions is not always clear, so further discussion is warranted.

The record in this case suggests that the dispute here involves both a question of damages and a question of liability. The Quades assert that the damage to the roofs is a covered loss for wind damage. Secura asserts that the damage to the roofs is due to wear and tear and is excluded under the policy. We believe that under the circumstances of this case a determination of the "amount of loss" un-

der the appraisal clause necessarily includes a determination of causation. Coverage questions, such as whether damage is excluded because it was not caused by wind, are legal questions for the court as this case goes forward. The Quades are incorrect that appraisers can never allocate damages between covered and excluded perils. In this case, the causation question involves separating loss due to a covered event from a property's preexisting condition. Adopting the Quades' interpretation would render appraisal clauses inoperative in most situations, and that result is in direct conflict with the public policy behind the appraisal process and the fact that we have repeatedly encouraged its use in Minnesota.

Minnesota has mandated appraisal clauses in fire insurance policies since 1895. Act of April 25, 1895, ch. 175, § 53, 1895 Minn. Laws 392, 421 (codified as amended at Minn.Stat. § 65A.01, subd. 3 (2010)). Like provisions have been included in property casualty policies for over 100 years as a means to provide "the plain, speedy, inexpensive and just determination of the extent of the loss." *Kavli v. Eagle Star Ins. Co.*, 206 Minn. 360, 364, 288 N.W. 723, 725 (1939). Appraisal clauses are also required for insurance policies that protect against damage caused by hail. Minn. Stat. § 65A.26 (2010). Accordingly, there is a strong public policy in Minnesota favoring appraisals, and that policy is favored in other jurisdictions as well. *See* Russ & Segalla, *supra*, § 209:17 (describing public policy as a significant component of insurance law, and the public policy of most jurisdictions favors arbitration and appraisals).

■ Older cases from our court reinforce the importance of the appraisal process and explain the authority of appraisers in some detail. We have held that "questions of law or fact, which are in-

volved as mere incidents to a determination of the amount of loss or damage" are appropriate to resolve in an appraisal in order to ascertain the "amount of the loss." *Itasca Paper*, 175 Minn. at 79, 220 N.W. at 427. In a 1914 case, we explained the role of appraisers as follows:

> [T]he appraisers must determine many matters other than the mere value of specific property produced before them for examination and appraisal. They must determine the quantity of property covered by the policy . . . , the quantity destroyed, the quantity damaged, whether the damage resulted from causes covered by the policy or from other causes not covered thereby, and various other questions, both of law and fact, upon which the parties may differ.

*Am. Cent. Ins. Co. v. Dist. Court*, 125 Minn. 374, 378, 147 N.W. 242, 244 (1914); *see also Janney, Semple & Co. v. Goehringer*, 52 Minn. 428, 432, 54 N.W. 481, 482 (1893) (stating that it was the duty of appraisers not only to determine the value of specific property, but also necessarily to construe the contract and determine its legal effect). In addition, we have indicated that a denial of liability "should not forbid a just determination of the amount of loss in the manner provided in the policy." *Itasca Paper*, 175 Minn. at 80, 220 N.W. at 428. But an appraiser's liability determinations are not "final and conclusive." *Id.* at 78, 220 N.W. at 427. Importantly, an appraisal award "does not preclude the insurer from subsequently having its liability on the policy judicially determined." *Id.* at 79, 220 N.W. at 427.

It is self-evident that Secura's policy does not obligate it to pay for repairs due to wear and tear or other excluded perils. Whether the appraisal award will be conclusive on all issues will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of

the appraisal award. We conclude that appraisal at this stage of the process must go forward, but the decision of the appraisers will be subject to review by the district court. This process gives force to the appraisal process but reserves to the courts the authority to decide coverage questions.

■ We emphasize that appraisal is a process that is generally intended to take place before suit is filed. Appraisal is generally understood to be a condition precedent to suit. *See, e.g., Levine v. Lancashire Ins. Co.,* 66 Minn. 138, 148–49, 68 N.W. 855, 859–60 (1896); *State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 895 (Tex.2009) ("[U]nless the 'amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts."). If the appraisal award is flawed because it answers questions of liability outside the scope of the appraisal process, then the award can be challenged later before the district court.

In sum, as an incidental step in the appraisal process in this case, the appraisers must necessarily determine the cause of the loss, as well as the amount necessary to repair the loss. However, to the extent that determination goes beyond the scope of appraisal and interprets policy exclusions, that determination is reviewable by the district court.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

PAGE, Justice (dissenting).

I respectfully dissent. The appraisal clause in the Quades' farmowners insurance policy provides, "[i]f you and we fail to agree on the amount of loss, either may demand an appraisal of the loss." In my view, Secura is not entitled to demand an appraisal because Secura has not challenged the "amount of loss," but rather has denied coverage.[1] Secura argues that it "did not deny coverage for [the Quades'] claim," but that it "admitted liability." The argument is unavailing. In response to the Quades' claim for damage to their roofs, Secura replied:

> [I]t's our understanding that the grommets that seal between the nail head and the roof metal have deteriorated over time. The grommets dry out and crack over time and this allows the water to enter around the nail heads. This is the result of continual deterioration over a period of time rather than a specific storm occurrence. Your farm policy excludes "loss to property caused by any of the following.... [faulty, inadequate or defective] (4) Maintenance".... I am sorry but we are unable to honor your claim for damage to the roof of the buildings.

The court holds that appraisers "must necessarily determine the cause of the loss," but that holding sidesteps the central dispute in this case—namely, whether the roof damage is a covered loss. While Minnesota law empowers appraisers to consider causation to determine the "amount of loss," it does not authorize appraisers to make the legal determination that the claimed loss is not covered by the policy. *See Mork v. Eureka–Sec. Fire & Marine Ins. Co.,* 230 Minn. 382, 384, 42 N.W.2d 33, 35 (1950) ("The finding of appraisers on the question of coverage ...

---

1. The parties do not dispute that district courts (not appraisers) make coverage determinations. *See also Quade v. Secura, Ins.,* 814 N.W.2d 703, 707 (Minn.2012) ("Coverage questions, such as whether damage is excluded because it was not caused by wind, are legal questions for the court as this case goes forward.").

[is not] final."); *Harrington v. Agric. Ins. Co. of Watertown, N.Y.*, 179 Minn. 510, 512, 229 N.W. 792, 793 (1930) ("[A]lthough the appraisers of a fire loss must determine what property was covered in order to arrive at the amount of damage, the right of the insurer to have a judicial determination of liability includes the right to a judicial determination of the coverage of the policy."); *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 175 Minn. 73, 78, 220 N.W. 425, 427 (1928) (noting that appraiser's coverage determinations that "involve[ ] liability on the contract" are "not final and conclusive upon either party"). But that is precisely what the court's decision permits.

Because the "amount of loss" is not in dispute, I would hold that Secura may not invoke the appraisal clause and affirm the court of appeals.

In the alternative, Secura argues that even if it denied coverage, it should nevertheless be permitted to demand an appraisal. To the extent an insurer is entitled to demand an appraisal when there is a denial of coverage, from the standpoint of judicial economy, it is logical to answer the coverage question first because, if the court determines that there is no coverage, then there is no need for an appraisal. Moreover, if there is a coverage dispute, assuming the appraisal goes forward, it does not resolve the issues between the parties, necessitating a judicial determination in any event.