*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0895**

Michael N. Palm, Sr.,
Appellant,

vs.

Calhoun Realty Company,
Respondent.

**Filed February 1, 2016
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CV-14-4218

Mark A. Olson, Olson Law Office, Burnsville, Minnesota (for appellant)

Jack Atnip III, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Stauber, Judge; and Randall, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Michael N. Palm Sr. challenges the summary-judgment dismissal of his claims for breach of contract and breach of the implied covenant of good faith and fair dealing arising out of his salesperson-broker relationship with respondent Calhoun Realty Company. Appellant asserts that the district court (1) erred as a matter of law in granting respondent's motion for summary judgment; (2) failed to comply with Minn. R. Civ. P. 56.05; and (3) erred in applying Minn. R. Civ. P. 56.06 when it declined to grant appellant additional time for discovery. Because the district court correctly determined as a matter of law that there was no breach of contract or breach of the implied covenant of good faith and fair dealing, we affirm.

## FACTS

Appellant is a licensed real estate agent in Minnesota and respondent is a real estate broker that facilitates the sale of businesses and real estate. Respondent hires licensed real estate agents as salespersons to assist it in buying and selling real estate and businesses. Respondent classifies its salespersons as independent contractors. On December 22, 2008, appellant and respondent entered into an Independent Contractor Agreement (ICA), which established a salesperson-broker relationship between the parties. This agreement governs, among other matters, how salespersons are paid for their work.

Appellant worked as a salesperson and independent contractor for respondent until February 2011. In this capacity, appellant acquired two listing agreements that are relevant

to this appeal. The first involved several Holiday gas stations in Minnesota. Appellant and Apollo Oil signed a listing agreement giving respondent the exclusive right to sell, lease, exchange, or contract to sell the gas stations described in the agreement. Appellant argues that Apollo Oil engaged in a subsequent transaction that should be recognized as a sale under the listing agreement, thus entitling appellant to a commission under the terms of the ICA. Apollo Oil refused to pay a commission on the transaction. Respondent made some effort to pursue payment from Apollo Oil, but eventually ceased its effort to collect a commission on this transaction.

The second relevant listing agreement involved the Quarterdeck Resort and Boathouse Eatery in Minnesota. Quarterdeck's owners signed a listing agreement giving respondent the exclusive right to sell, lease, exchange, or contract to sell Quarterdeck. Appellant argues that the owners of Quarterdeck engaged in a subsequent transaction that constituted a sale under the terms of the agreement. Respondent initially pursued payment of a commission on the transaction, but after acquiring additional information, respondent ceased that effort. Appellant contends that, under the terms of the ICA, he is entitled to a commission, and that respondent did too little to protect appellant's interests and pursue payment from Quarterdeck's owners.

Appellant filed a complaint alleging breach of contract with regard to several transactions, failure to pay commissions, breach of the covenant of good faith and fair dealing with regard to the Apollo Oil and Quarterdeck transactions, and negligence. Respondent answered and also noticed its intent to move for summary judgment on all

3

counts. Appellant voluntarily dismissed his negligence claim. The district court granted respondent's motion for summary judgment with respect to the two counts that alleged breach of contract and breach of the covenant of good faith and fair dealing in relation to the Apollo Oil and Quarterdeck transactions. The district court denied respondent's motion for summary judgment on two other counts, but the parties later agreed to dismiss those two counts with prejudice. Final judgment was entered April 1, 2015. Appellant now challenges the entry of summary judgment for respondent as to the breach of contract and breach of the covenant of good faith and fair dealing claims relating to the Apollo Oil and Quarterdeck transactions.

## D E C I S I O N

### I.

Appellant argues that the district court incorrectly interpreted the ICA, and thus erred in granting summary judgment in favor of respondent on appellant's breach-of-contract claim. Appellant contends that the district court also erred in its application of the law to appellant's claim for breach of the covenant of good faith and fair dealing.

"On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011). "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

4

there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). The district court's order partially granted respondent's motion for summary judgment based on the court's construction of a contract into which the parties entered. We review the district court's construction of the contract de novo, because contract construction is "a question of law unless the contract is ambiguous." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). In turn, "[w]hether a contract is ambiguous is a question of law that we review de novo. The language of a contract is ambiguous if it is susceptible to two or more reasonable interpretations." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010) (citation omitted).

> Absent ambiguity, we construe contract terms consistent with their plain, ordinary, and popular sense, so as to give effect to the intention of the parties as it appears from the entire contract. Although we begin with the plain and ordinary meaning of the terms, the terms of a contract must be read in the context of the entire contract.

*Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012) (quotations and citations omitted). A written contract should be interpreted so that none of its provisions is rendered meaningless. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). "[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). Further, we generally do not "consider extrinsic evidence when determining contractual ambiguity." *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995).

**Breach of contract – construction of the ICA**

Appellant argues that, because the district court's construction of the ICA revealed ambiguity in its terms, the district court improperly decided questions of fact at the summary judgment stage that should have been submitted to a jury. The parties dispute the operation of two paragraphs in particular. Paragraph I of the ICA states:

> BROKER [i.e., respondent] agrees to make available to Salesperson [i.e., appellant] all current listings in its office, except such as the BROKER for valid and usual business reasons may place exclusively in the temporary possession of some other salesperson, and agrees to assist Salesperson in their work by advice, information and full cooperation in every way reasonably possible.[1]

Appellant argues that this paragraph requires respondent to assist appellant in collecting commissions from customers with "full cooperation in every way reasonably possible," and that respondent failed to meet this contractual obligation when it declined to pursue commissions on the Apollo Oil and Quarterdeck transactions. The district court held that this provision "cannot be read as requiring [respondent] to pursue litigation or make similarly vigorous efforts to recover a commission on [appellant]'s behalf." We agree with the district court's interpretation.

---

[1] This language is from the copy of the ICA that is found in the district court record. This document, and respondent's "Broker's Policy Manual"—another document relevant to this appeal—were attached to Andrew Kocemba's affidavit, submitted in support of respondent's motion for summary judgment. While appellant maintains that Kocemba lacks personal knowledge of the transactions at issue, appellant does not argue that these copies of the ICA and the Broker's Policy Manual are inaccurate or otherwise defective.

Paragraph I of the ICA focuses on how respondent will facilitate the work that the parties intend salespersons to do. The provision explains that respondent will assist appellant "in [his] work," which logically means the "work" that is set out in the ICA. Paragraph III describes this work as selling and leasing or renting any or all real estate listed with respondent, soliciting listings and customers, and engaging in other forms of business promotion so that the "parties may draw the greatest profit possible."

The structure of the ICA also suggests that paragraph I only pertains to "work"— not to payment for that work. Paragraphs I, II, and III of the ICA address what respondent agrees to do to help salespersons accomplish their work, and what salespersons will do to accomplish that work. Paragraph IV discusses what both parties will do to abide by relevant laws and regulations that govern their work. Payment for this work is covered by paragraphs V-VIII and XIII. It could be possible to understand respondent's agreement in paragraph I to "assist Salesperson in their work by advice, information and full cooperation in every way reasonably possible" as a promise to help the salesperson collect commissions, if commissions were not addressed anywhere else in the ICA. Interpreting the contract as a whole, it is logical to conclude that commission procedures are set out in the later paragraphs explicitly addressing commissions, while the earlier paragraphs concern work that salespersons will do and assistance that respondent will provide.

Paragraph V of the ICA reads as follows:

> The commission and fees for service rendered in the sale or rental, trade or leasing of real estate shall be the usual and customary commissions as set forth in the BROKER'S Policy Manual. In no event shall the Salesperson charge less than the

7

commission or fee established by the BROKER without prior written agreement, entered into by Salesperson and BROKER, to that effect. BROKER shall advise Salesperson of any special contract relating to any particular transaction which the Salesperson undertakes to handle. When Salesperson shall perform any work hereunder whereby a commission is earned, when said commission is collected, the expenses as set forth in the current commission schedule in the BROKER'S Policy Manual shall be deducted from said commission, and the balance shall be divided between Broker and Salesperson as set forth in the current commission schedule in the BROKER'S Policy Manual. In the event of special arrangements with any client of BROKER or Salesperson on property listed with Broker or controlled by Salesperson, a special division of commission may apply. Such rate of divisions is to be agreed upon before completion of the transaction by Broker and Salesperson and set forth in writing.

Paragraph V refers to respondent's Broker's Policy Manual (BPM). The BPM covers respondent's policies and procedures regarding, among other matters, company organization, compensation, staffing, advertising, and rates of commission. Section 2.0 of the BPM contains ten subsections that address compensation policies and procedures. Subsection 2.8 provides, "Any action against a buyer or seller for commissions due shall be the decision of management. Any cost incurred to collect such commissions shall be deducted before splitting the fees between the associates and the company." Respondent contends that this provision gives it the sole discretion to determine whether and how to pursue unpaid commissions. Appellant disputes whether he agreed to be bound by all sections of the BPM at the time he signed the ICA. He agrees only that he was bound by one subsection of the BPM—subsection 2.1—pertaining to respondent's commission schedule, because, he argues, that is the only provision to which paragraph V explicitly

8

refers. Subsection 2.1 explains how commissions are to be calculated and distributed to salespersons. It is untenable, however, that the references to the BPM in paragraph V of the ICA are only references to subsection 2.1, for the following reasons.

The first sentence of paragraph V states, "The commission and fees for service rendered in the sale or rental, trade or leasing of real estate shall be the usual and customary commissions as set forth in the [BPM]." The second sentence states that salespersons are to obtain prior written agreement from respondent if they intend to charge a customer a lesser commission or fee. This cannot be a reference to subsection 2.1. These sentences clearly refer to commissions that are to be charged to the customer. Subsection 2.1 provides no information about the "usual and customary commissions" that customers pay. Section 6.0 of the BPM does provide this information. Subsection 6.1, which is found in section 6.0, describes in detail how fees are to be assessed for the sale or lease of different types of property. The fee schedule in subsection 6.1 indicates the rate of commission that is to be charged for each type of property. One would not be able to learn this by reference to BPM subsection 2.1. Therefore, the ICA must incorporate more than just subsection 2.1 of the BPM.

Further, when paragraph V of the ICA refers to the subject matter of subsection 2.1, it does so specifically. Once a salesperson has performed work and has earned a commission on that work, paragraph V states that expenses are to be deducted from the commission and the balance divided according to "the current commission schedule in the [BPM]." The current commission schedule is found in subsection 2.1. This specific

9

reference to subsection 2.1 does not preclude paragraph V from referring to other parts of the BPM—such as subsection 6.1. Paragraph V of the ICA clearly incorporates more than subsection 2.1 of the BPM.

Interpretation of subsection 2.1 itself benefits from reference to other subsections in BPM section 2.0. This indicates that the ICA did not adopt only subsection 2.1 when it referred to the BPM. Part of subsection 2.1 explains that where a salesperson "incurs expenses that have not been officially approved by the company prior to closing a sale, the company reserves the right to deduct such unauthorized expenses from the associate's portion of the commission prior to distribution." But salespersons need not seek official approval for every expense they incur in the course of their work for respondent. Some expenses are considered standard, which is explained in a different part of section 2.0. Subsection 2.10 indicates which types of expenses salespersons pay for and which expenses are to be paid by respondent as a matter of course.

Subsection 2.1 also explains that "[a]ny expenses incurred by [respondent] in connection with payment or collection of a commission, including any legal attorney fees, shall be deducted before computing the commission of the participating associates[]." Subsections 2.8 and 2.10 address legal actions as well. Subsection 2.8 states that the decision whether to bring an action against a customer for payment of a commission "shall be the decision of management." Additionally, subsection 2.8 reiterates that where costs are incurred in collecting a commission, those costs will be deducted from the commission before dividing it between salespersons and respondent. Subsection 2.10 lists "limited

10

legal counseling approved by management" as an expense to be paid by respondent. These subsections help flesh out the meaning of subsection 2.1. Because portions of section 6.0 and section 2.0 of the BPM are necessary to the interpretation of paragraph V, the ICA incorporates at least these portions of the BPM.

In earlier submissions to the district court, appellant argued that, even if all sections of the BPM are binding on him, subsection 2.8 did not grant respondent the sole discretion to determine whether to take legal action to collect unpaid commissions. The plain meaning of the BPM contradicts this position. The following language is at issue: "Any action against a buyer or seller for commissions due shall be the decision of management." The inclusive term "any" indicates that the parties mean to refer to all actions of this type. While the words "sole" and "discretion" do not appear in this provision, there is no language indicating that salespersons and respondent will cooperate in making decisions regarding litigation. The provision states that any legal action "shall be *the* decision of management" (emphasis added). This does not indicate that respondent is to share decision-making authority. Subsection 2.10 supports this reading. It lists "limited legal counseling approved by management" as an expense respondent will pay. This suggests that respondent will decide when and what kind of legal counseling is appropriate.

Other subsections in section 2.0 also bolster this interpretation. For example, subsection 2.4 requires salespersons to obtain management's prior approval for any deferred commissions. That provision does not include the term "sole," but the provision clearly means that respondent is the only one with authority to approve such a commission.

11

Likewise, subsection 2.10 grants respondent the authority to agree to pay expenses that it does not cover as a matter of course. The provision makes no mention of "discretion" or "sole" authority, but there is no indication that respondent will share this decision-making authority with salespersons.

The district court did not err in granting summary judgment in favor of respondent. The ICA incorporated the BPM by reference, even though respondent did not ask appellant to sign the BPM itself or otherwise acknowledge receipt of the BPM.[2] According to the terms of the ICA and the BPM, respondent had no contractual duty to initiate litigation or otherwise pursue allegedly unpaid commissions by any particular means.

**Breach of the implied covenant of good faith and fair dealing**

Appellant argues that the district court also erred in applying the law to his claim for breach of the covenant of good faith and fair dealing. The district court held that appellant failed to introduce evidence that was sufficient to show that respondent had acted in bad faith, and granted summary judgment in favor of respondent. We review the district court's summary-judgment decision de novo. Interpretation of a contract is also a question of law, which we review de novo.

"[A] claim for breach of an implied covenant of good faith and fair dealing implicitly assumes that the parties did not expressly articulate the covenant allegedly breached." *In re Hennepin Cty.*, 540 N.W.2d at 503. Here, appellant argues that his only

---

[2] The better practice would have been to provide the BPM for signature alongside the ICA at the time the parties entered the ICA.

means of collecting payment for his work required respondent's cooperation, and that respondent's failure to use litigation to pursue unpaid commissions on appellant's behalf constitutes breach of this implied covenant. But, as explained above, the plain language of the ICA and the BPM indicates that the parties agreed that respondent would decide whether to take legal action to recover unpaid commissions. "A party to a contract does not act in bad faith by asserting or enforcing its legal and contractual rights." *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. App. 1998) (quotation omitted). Respondent did not act in bad faith when it decided not to pursue commissions for the Apollo Oil and Quarterdeck transactions, which was its contractual right to determine. The district court did not err in granting respondent summary judgment on this claim, though the court reached its conclusion via different reasoning. The district court incorrectly considered whether appellant had offered sufficient evidence of respondent's bad faith, even though the court had found that respondent did not have a contractual obligation to litigate. This court may affirm the district court's decision despite the basis on which it was decided. "[Appellate courts] will not reverse a correct decision simply because it is based on incorrect reasons." *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987).

**Unconscionability**

Appellant argues that, if the ICA is interpreted to grant respondent the sole discretion to decide whether to pursue collection of a commission, the contract is unconscionable. Appellant did not raise this issue in the district court. "A reviewing court must generally consider only those issues that the record shows were presented and

13

considered by the trial court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). This court may decide to consider the issue in the interest of justice. Minn. R. Civ. App. P. 103.04. But appellant also failed to adequately brief the issue. Appellant devotes only a few sentences to the issue in his principal brief, and his analysis is limited to one conclusory statement. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (holding that issues not briefed on appeal are waived). For these reasons, we decline to consider appellant's argument.

## II.

Appellant argues that the district court incorrectly applied Minn. R. Civ. P. 56.05 and 56.06 in making its summary-judgment decision. Rule 56.05 provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Appellant objects to the district court's reliance on an affidavit submitted in support of respondent's motion for summary judgment, on the basis that the affiant lacked personal knowledge of relevant events, failed to set forth facts that would be admissible in evidence, and failed to show that he is competent to testify. The district court held that the ICA unambiguously grants respondent the discretion to determine how it will collect unpaid commissions based on the terms of the contract itself. Because the district court did not base its decision on the affiant's challenged statements, any error in applying rule 56.05 was harmless and does not provide a basis for reversal. Minn. R. Civ. P. 61.

14

Appellant also argues that the district court erred when it failed to grant him more time for discovery, pursuant to Minn. R. Civ. P. 56.06. The rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present, by affidavit, facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Minn. R. Civ. P. 56.06. Because additional discovery would not reveal any evidence that would change the plain meaning of the ICA, the district court did not err in denying appellant a continuance.

**Affirmed.**