# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1022

_____

Axis Surplus Insurance Company

*Plaintiff - Appellant*

v.

Condor Corporation

*Defendant - Appellee*

_____

Appeal from the United States District Court
for the District of Minnesota

_____

Submitted: October 20, 2021
Filed: December 7, 2021

_____

Before GRUENDER, ERICKSON, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

This case requires us to determine the scope of an appraiser's duties. Here, an insurance policy allows disagreements over the "amount of loss" to go to an appraiser. Under a provision like this one, does the appraiser get to determine what

caused it too? We agree with the district court[1] that, under Minnesota law, the answer is yes.

## I.

Following a hailstorm in 2018, Condor Corporation filed a claim for benefits with Axis Surplus Insurance Corporation, which had been its insurer for three years. The parties agreed that hail had damaged the roofs on an apartment complex that Condor owned but disagreed about when it happened. An adjuster appointed by Axis thought the damage was old—from a pre-policy hailstorm that occurred before 2012. Condor's position was that the damage was new.

To resolve the dispute, Condor demanded an appraisal. Under the policy, either party could demand one whenever there was a disagreement over "the value of the property or the amount of loss." *See* Minn. Stat. § 65A.26 (requiring "[e]very policy of insurance against damage by hail" to have a similar appraisal provision). The next step was appraisal, in Condor's view, because the parties could not agree on the "amount of loss."

What Axis did next was unsurprising. Having already denied coverage, it refused to appoint an appraiser because, in its words, "the property insurance contract allows for appraisal [only] in circumstances where coverage is undisputed."

With the parties locked in a stalemate, Axis filed a lawsuit in federal court seeking "a declaration that there [was] no coverage and [that] the [parties'] coverage dispute preclude[d] appraisal." True to its position, Condor responded by filing a motion to compel one.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

The district court sided with Condor. But rather than proceeding with the appraisal, Axis sought immediate appellate review by having the court direct the entry of a partial final judgment. *See* Fed. R. Civ. P. 54(b).

## II.

The interpretation of an insurance policy presents a question of law that we review de novo. *See Hampton v. Kohler*, 989 F.3d 619, 621 (8th Cir. 2021). Here, we are "bound by the decisions of the Minnesota Supreme Court" because the parties have asked us to interpret a Minnesota policy. *C.S. McCrossan Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019) (quotation marks omitted). In Minnesota, as elsewhere, "[c]ontracts of insurance . . . [are] construed . . . in their plain, ordinary, and popular sense." *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960).

The insurance policy in this case says that, whenever Axis and Condor "disagree on . . . the amount of loss, either may make written demand for an appraisal of the loss." The focus here is "on the meaning of the phrase 'amount of loss.'" *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012).

The Minnesota Supreme Court interpreted this exact phrase nearly a decade ago in *Quade*, except there the disagreement was over how much damage a windstorm had caused. *Id.* at 704–05. The duty to resolve the dispute fell upon the appraiser because, "in the insurance context, [the] appraiser's assessment of the 'amount of loss' *necessarily* includes a determination of the cause of the loss." *Id.* at 706 (emphasis added). The reason: the word "loss" is itself defined by reference to the insurer's "liability" under the contract. *Id.* (quoting *Black's Law Dictionary* 1030 (9th ed. 2009)); *see also The American Heritage Dictionary of the English Language* 1037 (5th ed. 2016) (defining "loss" as "[t]he amount of a claim on an insurer by an insured").

Just like in *Quade*, the dispute here is over the "amount of loss." If the earlier storm caused the damage, as Axis claims, then the amount of loss will be zero because the insurer would have no "liability" under the contract. *Id*. at 706–07. If, on the other hand, a storm within the policy period caused the damage, as Condor argues, then Axis's "liability" will be greater than zero. *Id*.

To be sure, "the line between liability and damage questions is not always clear." *Id*. at 706. But *Quade* tells us how to distinguish between the two. If the question here were *solely* about whether hail is a covered peril or certain preexisting conditions are excluded, then these would be "legal questions for the court." *Id*. at 707. But when, as here, it "involves separating loss due to a covered event," the 2018 storm, "from a property's preexisting condition," the question is one for the appraiser. *Id.* at 707.

## III.

We accordingly affirm the judgment of the district court.

_____