*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1837**

Mark LaVigne,
Appellant,

vs.

State Farm Fire and Casualty Company,
Respondent.

**Filed June 22, 2026
Affirmed
Harris, Judge**

Wabasha County District Court
File No. 79-CV-25-177

Edward E. Beckmann, Beckmann Law Firm, LLC, Bloomington, Minnesota (for appellant)

Scott G. Williams, Lindsey A. Streicher, Haws-KM, P.A., St. Paul, Minnesota (for respondent)

Considered and decided by Bond, Presiding Judge; Reyes, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

In this appeal challenging the district court's order on cross-motions for summary judgment, appellant asserts that he was not paid replacement-cost value under a homeowner's insurance policy with respondent after hail damaged his property. He argues that (1) the policy requiring him to repair damaged parts of the property within two years of the date of loss conflicts with Minnesota Statutes section 65A.01, subdivision 3 (2024),

and (2) respondent needed to show it was prejudiced by his failure to repair the damaged property to justify denying replacement-cost value.  Because there is no genuine issue of material fact and the district court did not err in its application of the law, we affirm.

**FACTS**

This case concerns the summary-judgment dismissal of a complaint by appellant Mark LaVigne against his insurer, respondent State Farm Fire and Casualty Company, that alleged underpayment of homeowner's insurance proceeds for hail damage to LaVigne's property.  The district court granted summary judgment, determining that State Farm did not breach the policy and LaVigne failed to comply with an unambiguous condition precedent, which would have triggered replacement-cost value.  The following facts derive from the evidence in the summary-judgment record and are framed in the light most favorable to LaVigne as the nonmoving party.[1]

**I. Homeowner's Policy**

LaVigne had a homeowner's insurance policy with State Farm that covered, among other things, property damage resulting from hail.  Under "Section I–Loss Settlement," the policy specifically states that, "until actual repair or replacement is completed, [State Farm] will pay only the actual cash value of the damaged property."  The policy defines "actual cash value" as "the value of the damaged part of the property at the time of loss, calculated

---

[1] *See Schroeder v. Simon*, 985 N.W.2d 529, 535-36 (Minn. 2023) ("In evaluating a grant of summary judgment, we must view the evidence in the light most favorable to the nonmoving party." (quotation omitted)).

as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation."

The policy also provides replacement-cost value, in which State Farm will "pay the cost to repair or replace with similar construction" the damaged parts of the property. To recover these benefits, the insured "must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify [State Farm] within 30 days after the work has been completed."

## II. Loss, Insurance Claim, Appraisal, and Court Action

On May 11, 2022, LaVigne's property was damaged by hail. LaVigne reported the damage to State Farm two months later on July 8. On July 21, State Farm inspected the property and, three days later, issued a payment of $435.48 to LaVigne. State Farm also reminded LaVigne that he needed to complete repairs within two years of the date of loss if he wanted the replacement-cost value. Unless he completed the repairs and notified it within 30 days, State Farm indicated that it would only pay "the actual cash value of the damaged part of the property, which may include a deduction for depreciation."

In November 2022, LaVigne hired a contractor who inspected the property damage and sent a competing estimate to State Farm.[2] One year later, in December 2023, State Farm sent another letter to LaVigne, again reminding him of the process for obtaining the replacement-cost value. It explained that an additional $2,063.68 "was available to

---

[2] The estimate that LaVigne's contractor sent to State Farm is not included in the record, but a State Farm email from June 2023, acknowledges receipt of the estimate sent by the contractor. In his deposition, LaVigne also indicated that his contractor would have evaluated the damage on November 8, 2022.

[LaVigne] for replacement cost [value] and may be claimed upon completion of the repairs."

On May 3, 2024, roughly one week before the two-year anniversary of the date of loss, LaVigne demanded an appraisal. In August 2024, an appraisal panel evaluated the property and awarded LaVigne $28,889 in actual cash-value. The appraisal award stated that the replacement-cost value totaled $48,733, but State Farm did not issue this payment to LaVigne because of the policy's two-year deadline.

In December 2024, LaVigne's attorney emailed State Farm asking about the $48,733 award in replacement-cost value. He stated, "I understand that $3,742.20 was paid early on, then on August 19, $24,146.80 was paid. The balance is thus $19,844." A claims specialist from State Farm replied and explained that the payment had been "triple-checked" and confirmed that LaVigne received the correct amount. State Farm reiterated that the two-year deadline prevented it from issuing payment for replacement-cost value.

In March 2025, LaVigne filed this suit, seeking a declaratory judgment against State Farm and alleging that State Farm breached its contract. The parties filed cross-motions for summary judgment. State Farm argued that LaVigne failed to complete a condition precedent to obtain replacement-cost value because he did not repair the damaged property within two years of the date of loss. The district court granted summary judgment to State Farm.

LaVigne appeals.

**DECISION**

LaVigne challenges the district court's order on cross-motions for summary judgment. He argues that the district court erred because (1) State Farm's two-year deadline is inconsistent with the statutory right to appraisal, and (2) even if the two-year deadline were permissible, State Farm was not prejudiced by repairs made after the deadline passed, so LaVigne may still recover. LaVigne specifically argues that Minnesota Statutes section 65A.01, subdivision 3, sets forth "both a statutory minimum and a statutory right" to "payment of all line items awarded in appraisal, unless the loss is specifically excluded in the policy."

On review of the district court's grant of summary judgment, we determine "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). "The interpretation of an insurance policy and the application of the policy to the undisputed facts of a case are questions of law that [we] review[] de novo." *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015); *see also Medica, Inc. v. Atlantic Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn. 1997) (explaining that, when "the parties do not dispute the relevant facts, a de novo standard of review is applied to determine whether the district court erred in its application of the law").

We interpret an insurance policy according to contract interpretation principles. *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013); *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002). When the insurance-policy language is unambiguous, it must be given its usual and accepted meaning. *Wanzek*

5

*Constr., Inc. v. Employers Ins. of Wausau*, 679 N.W.2d 322, 324 (Minn. 2004). Similarly, "[w]hen a statute's language is unambiguous, our role is to give effect to the statute's plain meaning." *Auto-Owners Ins. Co. v. Second Chance Invs., LLC*, 827 N.W.2d 766, 771 (Minn. 2013).

## I.    State Farm's two-year deadline for completing repairs to obtain replacement-cost value does not violate Minnesota law.

LaVigne argues that State Farm's two-year deadline to complete repairs is unenforceable because, under Minnesota Statutes section 65A.01, subdivision 3, he has a "statutory right to payment of all line items awarded in appraisal, unless specifically excluded in the policy." He claims that, because section 65A.01, subdivision 3, does not contain a two-year deadline for recovering replacement-cost value, such a deadline is impermissible in the policy.

LaVigne cites this court's recent opinion in *Ariel, Inc. v. State Farm Fire and Cas. Co.*, 15 N.W.3d 673, 680 (Minn. App. 2024), to argue that State Farm's two-year deadline conflicts with section 65A.01, subdivision 3. LaVigne overstates the holding in *Ariel*.

In that case, Ariel's property sustained damage covered by an insurance policy with State Farm. *Ariel, Inc.*, N.W.3d at 676. Ariel worked with a general contractor to repair the damaged property, as well as a public adjuster to negotiate with State Farm. *Id.* State Farm paid Ariel what it believed covered the "entire loss," but Ariel argued that there were additional repairs completed, for which it was not reimbursed. *Id.* Ariel sued State Farm four days before the two-year limitations period expired on legal actions consistent with section 65A.01 (2022). *Id.* Four months after the two-year limitations period expired,

Ariel demanded an appraisal to determine the amount of loss, but State Farm did not respond to the appraisal demand. *Id.* at 676-77. State Farm moved for summary judgment, and Ariel moved to compel an appraisal. State Farm argued that Ariel's demand for appraisal was untimely. *Id.* The district court granted summary judgment to State Farm and denied Ariel's motion to compel an appraisal. *Id.*

This court concluded that a demand for appraisal was not barred by the statute's two-year time limit so long as a party "timely commence[s] an action on the policy against the insurer." *Id.* at 680. What this court did *not* hold is that insureds are guaranteed a statutory right to recover all line items in an appraisal award. Furthermore, replacement-cost value was never an issue in *Ariel*.

In support of his argument that he "has a statutory right to payment of all line items awarded in an appraisal," LaVigne cites Minnesota Statutes section 65A.01, subdivision 3. But that section does not require State Farm to pay the full amount of the appraisal award. Instead, the form policy language contained in section 65A.01, subdivision 3, states that an appraisal award "shall determine the amount of actual value and loss." Contrary to LaVigne's assertion, it does not mandate that the amount of the appraisal award must be paid by State Farm.

To this end, State Farm relies on *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012), to argue that appraisal awards merely determine the amount of loss but do not dictate what an insurer must pay. In that case, a farmer's property was damaged by a windstorm, and he sought coverage under his insurance policy. *Id.* at 704. But the insurance company argued that certain damage to the property was not covered under the policy because the

damage resulted from gradual wear and tear. *Id.* at 706-07. The supreme court held that "appraisers have authority to decide the 'amount of loss' but may not construe the policy or decide whether the insurer should pay." *Id.* at 706. The court added that "[c]overage questions, such as whether damage is excluded because it was not caused by wind, are legal questions for the court." *Id.* at 707. Thus, the *Quade* court distinguished between the amount of loss determined by an appraisal and what an insurer must pay based on the legal coverage question under the policy. *See id.* at 707-08 ("Whether the appraisal award will be conclusive on all issues will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award.").

Furthermore, as the district court highlighted in its order, the following paragraph in section 65A.01, subdivision 3, is instructive:

> It shall be optional with this company to take all of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required.

Minn. Stat. § 65A.01, subd. 3. The district court interpreted this paragraph to mean that State Farm "has the choice to either repair the property (replacement cost) or to pay the appraised value of the damage." This aligns with State Farm's policy on recovering replacement costs.

In sum, State Farm's two-year deadline for recovering replacement-cost value does not conflict with section 65A.01, subdivision 3, or Minnesota caselaw.

**II.** **State Farm need not prove that it was prejudiced by LaVigne's failure to complete repairs within the two-year deadline and thus is not required to pay the replacement-cost value.**

LaVigne next argues that an "insurer may establish the breach of a policy obligation for a covered loss only by showing actual prejudice." He asserts that, because State Farm did not show that it was prejudiced by his failure to repair or replace the damaged parts of the property, "State Farm has enjoyed the benefit of keeping the replacement cost value payment in its own bank account" and that the "timing of repairs is immaterial to State Farm." For these reasons, he contends that State Farm must pay the full replacement costs. We are not convinced.

LaVigne cites several cases for the assertion that an insured must show prejudice to justify its refusal to pay certain benefits. But his reliance on these cases is misguided. "Insurers are not required to make a showing of prejudice when the insured has failed to comply with a condition precedent to coverage." *Minn. Laws. Mut. Ins. Co. v. Bradshaw & Bryant Law Off. PLLC*, 19 N.W.3d 206, 220 (Minn. App. 2025), *rev. denied* (Minn. June 17, 2025). "A condition precedent is a contract term that calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which [the promisor's] obligation is made to depend." *Id.* (quotation omitted). Thus, the question presented is whether completing repairs or replacements is a condition precedent to recover replacement costs.

LaVigne seems to concede that there is a condition precedent for recovering replacement-cost value, but he argues that it is *not* the actual repair of the damaged property. Instead, he asserts that the condition precedent "is the issuance of an appraisal

9

award." According to LaVigne's reading of the policy, paragraph 1 ("Replacement Cost Loss Settlement")—under "Section I–Loss Settlement,"—"is expressly predicated on the existence of an appraisal award." He claims that paragraph 4 ("Appraisal") dictates the amount of loss, and paragraph 8 ("Loss Payment") "provides that the entire 'Loss' becomes payable five days after the award." Thus, according to LaVigne, the appraisal award is the condition precedent to recovery of replacement-cost value, not actual completion of repairs. This argument is undermined by the plain language of the policy, which addresses replacement-cost value and appraisals in separate provisions. The appraisal clause requires appraisers to "state separately the [actual cash value], [replacement-cost value], and, if applicable, the market value of each item in dispute," but it does not specify which valuation must be paid under the policy in any particular circumstance.

Here, the policy states that State Farm "will pay the cost to repair or replace . . . *subject to the following*," and then lists several conditions. (Emphasis added.). The phrase "subject to the following" signals that the provisions that follow establish a condition precedent to receive the replacement-cost value. The policy further states that "*to receive any additional payments* on a replacement cost basis, [the insured] must *complete the actual repair or replacement* of the damaged part of the property *within two years after the date of loss*." (Emphasis added.). The phrase "to receive any additional payments . . . [the insured] must complete the actual repair or replacement . . . within two years" defines what the insured must do to obtain payment of the replacement-cost value.

Contrary to LaVigne's assertion, the policy does not state that an appraisal award needs to be issued to recover replacement-cost value. Rather, the policy unambiguously

10

requires the insured to complete repairs within two years as a condition precedent to receiving replacement-cost value, regardless of when an appraisal occurs. Because compliance with this condition precedent is a prerequisite to coverage, State Farm is not required to demonstrate prejudice to deny liability for replacement-cost value. Additionally, based on the plain language of the contract, the condition precedent set forth was the actual repair or replacement of the damaged property.

In conclusion, the district court did not err in denying LaVigne's motion for summary judgment and granting State Farm's motion for summary judgment.[3]

**Affirmed.**

---

[3] Because we conclude that the policy does not cover the replacement-cost value of repairs to LaVigne's home, and because the claim has been paid in full based on the actual cash value, we need not address whether LaVigne is entitled to interest on any unpaid amounts.