# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 11-3084

———————

Grinnell Mutual Reinsurance Company,     *
                                       *

             Appellant,                 *

                                       *

        v.                          *    Appeal from the United States

                                       *    District Court for the

Roger Schwieger; Amy Streit, doing     *    District of Minnesota.

business as Schwieger Livestock;       *

Bernell Voss,                              *

                                       *

             Appellee.                *

———————

Submitted: May 16, 2012
Filed: July 16, 2012

———————

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Grinnell Mutual Reinsurance Company (Grinnell) appeals the district court's order granting summary judgment to Roger Schwieger and Amy Streit, d/b/a Schwieger Livestock (Schwieger), and Bernell Voss, on Grinnell's declaratory judgment claim concerning coverage under a liability insurance policy. We reverse and remand.

I.

This declaratory judgment action concerns a controversy over the coverage limits of an insurance policy issued by Grinnell to Voss. Voss owns and operates a cattle feed lot in Jackson County, Minnesota, in which he feeds to market weight cattle owned by others. Voss entered into an oral contract with Schwieger, under the terms of which Voss agreed to feed and care for cattle owned by Schwieger until they reached a market weight of 1400 to 1500 pounds, in return for a yardage fee of 28 cents per day per head of cattle. In July 2008, Schwieger's cattle in Voss's care began to die in unusually high numbers. According to Voss, a typical death loss for cattle over the course of a year would be roughly three percent, which would have amounted to approximately forty cattle annually out of Schwieger's herd of 1400 head. During the summer of 2008, 125 to 130 of Schwieger's cattle died from Rumensin poisoning.[1] Many of the surviving cattle sustained a growth deficiency resulting from the Rumensin poisoning.

Schwieger brought suit in Minnesota state court, asserting claims against Voss for strict liability, breach of express and implied warranty, and negligence. Schwieger alleged that Voss failed to properly mix a commercially produced nutritional supplement when feeding it to the cattle, with the result that the cattle were exposed to Rumensin levels much greater than they could tolerate. Schwieger sought damages for his cattle's excess mortality rates and delayed growth in reaching market weight.

Voss submitted the complaint in the underlying action to Grinnell, his insurer. Voss's insurance policy with Grinnell included two parts: (1) the FARMATE policy, which provides first party property coverage, and (2) the FARM-GUARD policy,

_____

[1]Rumensin is a commercially produced nutritional supplement for livestock.

which provides liability coverage.  The FARM-GUARD policy provides $1 million in coverage as follows:

**LIABILITY TO PUBLIC — COVERAGE A**

We will pay subject to the liability limits shown for LIABILITY TO PUBLIC COVERAGE and the terms of the policy all sums arising out of any one loss which any insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this policy.

If a claim is made or suit is brought against any insured person for liability covered by this policy, we will defend the insured person.  We will use our lawyers and bear the expense.

HOWEVER, WE WILL NOT DEFEND ANY SUIT AFTER OUR LIMIT OF LIABILITY FOR THIS COVERAGE HAS BEEN PAID.  WE WILL DEFEND OR SETTLE ONLY IF COVERAGE EXISTS UNDER THE TERMS OF THIS POLICY.

FARM-GUARD Policy, at 3 (internal quotation marks omitted).

The policy contains the following relevant exclusions:

**UNDER ANY OF THE COVERAGES**
***
6.      We do not cover bodily injury or property damage arising out of:

a.      custom farming operations of any insured person if the total gross receipts from all custom farming exceed $2,000 in the twelve months of the prior calendar year.[2]

---

[2]"Custom farming" is defined in the policy to include any activity arising out of or connected with the "care or raising of livestock or poultry by any insured person for any other person or organization in accordance with a written or oral agreement."

***

## UNDER LIABILITY TO PUBLIC — COVERAGE A
***

2.      We do not cover performance guarantees of crops or livestock.
***

5.      We do not cover property damage to property rented to, leased to, occupied by, used by, or in the care, custody or control of any insured person or any persons living in the household of an insured person.

Id. at 5, 7 (internal quotation marks omitted).

Voss had purchased a Custom Feeding Endorsement, which modifies the FARM-GUARD policy as follows:

**UNDER ANY OF THE COVERAGES**

In consideration of the premium charged, exclusion 6.a. under this section of the policy does not apply if:

1) the bodily injury or property damage arises from the activities of care or raising of livestock or poultry by any insured person for any other person or organization in accordance with a written or oral agreement; . . .

All other terms and provisions of the policy apply.

Custom Feeding Endorsement (internal quotation marks omitted).

Grinnell denied coverage for the loss of Schwieger's cattle and refused to defend or indemnify Voss in the case brought by Schwieger. Grinnell based the denial of coverage on Exclusion 5, the exclusion for damage to property in the "care, custody or control" of the insured.

---

Id. at 1 (internal quotation marks omitted).

-4-

Schwieger and Voss subsequently stipulated to a "Miller-Shugart Agreement," which was approved by the Minnesota district court.[3] As part of the agreement, Voss withdrew his answer to Schwieger's complaint and agreed that the Minnesota district court could enter default judgment against him in the underlying action. In exchange, Schwieger agreed not to execute the judgment against Voss personally, but rather reserved the right to execute the judgment against Grinnell. The Minnesota district court entered judgment against Voss in the amount of $1 million.

Grinnell then commenced this action against Schwieger and Voss in federal district court in Minnesota, seeking a declaratory judgment that the claims alleged in the underlying action are not covered under Voss's FARM-GUARD policy with Grinnell and that Grinnell therefore has no obligation to defend or indemnify Voss under the policy. The parties brought cross-motions for summary judgment asking the district court to determine as a matter of law whether Schwieger's claims alleged in the underlying action are covered under the policy. Schwieger argued that Voss had coverage for custom feeding operations under the Custom Feeding Endorsement because the endorsement superseded Exclusion 5 of the policy—the "care, custody or control" exclusion. Grinnell argued that the "care, custody or control" exclusion still applied because the Custom Feeding Endorsement provided that only Exclusion 6.a. did not apply, the endorsement did not refer to Exclusion 5, and the endorsement stated that all other policy provisions remained unchanged. The district court concluded that the claims were covered by the policy and granted Schwieger and Voss's motion for summary judgment.

---

[3]A Miller-Shugart Agreement allows an insured who has been denied coverage to enter into a settlement agreement whereby the insured agrees that judgment in a certain sum may be entered against him, in return for the claimant's releasing the insured from any personal liability and agreeing to seek coverage from the insurer. See Miller v. Shugart, 316 N.W.2d 729, 731-34 (Minn. 1982).

## II.

We "review de novo both the district court's grant of summary judgment and its interpretation of state insurance law," Pioneer Indus. v. Hartford Fire Ins. Co., 639 F.3d 461, 465 (8th Cir. 2011), "applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir. 2011) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co., 465 F.3d 900, 903 (8th Cir. 2006)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

There being no dispute about the facts, the only question to be answered is whether, as a matter of law, Schwieger's claims against Voss are covered under Grinnell's policy.

### A. Applicable Minnesota Law

Under Minnesota law, interpretation of an insurance policy, including whether a contract is ambiguous and whether an exclusion is valid and enforceable, is a question of law to be decided by the court.[4] See Gen. Cas. Co. of Wis. v. Outdoor Concepts, 667 N.W.2d 441, 443 (Minn. Ct. App. 2003) (noting that "[c]onstruction of an insurance policy involves a question of law") (citation omitted); Warren v. Am. Family Mut. Ins. Co., 418 N.W.2d 526, 528 (Minn. Ct. App. 1988) (noting that "[w]hether an insurance policy is ambiguous is a question of law") (citation omitted); Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998) (noting

---

[4]The parties have not disputed that Minnesota substantive law governs this matter, in which we exercise federal diversity jurisdiction under 28 U.S.C. § 1332.

-6-

that "whether the exclusion is valid and enforceable" is "a question of law") (citation omitted). When interpreting insurance policies, general principles of contract interpretation apply. See St. Paul Sch. Dist. v. Columbia Transit Corp., 321 N.W.2d 41, 45 (Minn. 1982) (noting that "[s]ubject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts") (citing Bobich v. Oja, 104 N.W.2d 19) (Minn. 1960)).

When the text of an insurance policy is unambiguous, "the language used must be given its usual and accepted meaning." Bobich, 104 N.W.2d at 24 (citing Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co., 50 N.W.2d 629 (Minn. 1951)). When policy language is ambiguous, it "will be construed against the insurer according to the 'reasonable expectations' of the insured." Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (quoting Minn. Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 179 (Minn. 1990)). Insurance policy language is ambiguous if reasonably subject to more than one interpretation or if provisions irreconcilably conflict. Medica, Inc. v. Atl. Mut. Ins. Co., 566 N.W.2d 74, 77 (Minn. 1997) ("Language in a policy is ambiguous if it is reasonably subject to more than one interpretation") (citing Hammer v. Investors Life Ins. Co. of N. Am., 511 N.W.2d 6, 8 (Minn. 1994)); Rusthoven v. Commercial Standard Ins. Co., 387 N.W.2d 642, 644-45 (Minn. 1986) (concluding that "irreconcilably inconsistent" terms render insurance policy ambiguous).

"Exclusions in a policy or endorsements are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage." Bobich, 104 N.W.2d at 24-25 (citing Wyatt v. Wyatt, 58 N.W.2d 873 (Minn. 1953)). Moreover, endorsements should be construed together with the policy to give full effect to all provisions, if possible, but "where provisions in the body of the policy conflict with an endorsement or rider, the provision of the endorsement governs." Id. at 24 (citing Wyatt, 58 N.W.2d 873).

## B. The "Care, Custody or Control" Exclusion

Grinnell argues that the district court erred in concluding that Exclusion 5, the exclusion for property in the "care, custody or control" of the insured, did not prevent coverage to Schwieger for damage to custom fed livestock. The parties agree that Schwieger's cattle were under Voss's care, custody, and control. Schwieger argues, however, that the district court correctly concluded that Exclusion 5 is superseded by the Custom Feeding Endorsement. Schwieger contends that the two provisions are in irreconcilable conflict and thus the policy is ambiguous and should be interpreted against the insurer according to the reasonable expectations of the insured.

Recently, in Gaza Beef, Inc. v. Grinnell Mutual Reinsurance Co., No. A11-444, 2011 WL 3654533 (Minn. Ct. App. 2011), the Minnesota Court of Appeals, on nearly identical facts, addressed the same insurance policy provisions at issue in this case. As with this case, Gaza Beef involved a declaratory judgment action by Grinnell against its insured's custom feeding customer following execution of a Miller-Shugart agreement between the insured and the customer. Id. The customer's cattle had sustained excess mortality and failed to reach expected market weight in a timely manner, allegedly resulting from problems with the cattle feed used by Grinnell's insured. The Minnesota Court of Appeals held that the insurance policy did not provide coverage for the insured's claimed loss. Id. at *4. In reaching its decision, the court rejected Gaza Beef's argument that the Custom Feeding Endorsement conflicted with the general provisions of the policy, reasoning that:

> The plain language of the custom-feeding endorsement states that it applies only to exclusion 6.a. and that it does not change the other portions of the policy, which include the section-5 ["care, custody or control"] exclusion. Exclusion 6.a. refers to "'bodily injury' or 'property damage' arising out of: 'custom farming' operations of any 'insured person' . . . ." But the custom-farming endorsement expressly states that, "all other terms and provisions of the policy apply." Among

-8-

those provisions is exclusion 5 for "'property damage'["] to "property rented to, leased to, occupied by, used by, or in the care, custody, or control of any 'insured person' or any persons living in the household of an 'insured person.'["] Because the custom-farming endorsement expressly limits its application to exclusion 6.a., it is not inconsistent with the "care, custody, or control" exclusion.

Id.

The court further noted that Grinnell's construction of the custom feeding endorsement did not conflict with the remainder of the policy, because the custom feeding endorsement was consistent with the overarching purpose that "Grinnell's policy provides liability insurance, which is a type of insurance that indemnifies one from liability to third persons as contrasted with insurance coverage for losses sustained by the insured." Id. (citation and internal quotation and alteration omitted). In other words, the court determined that Grinnell's liability policy, which contained a similar custom feeding endorsement, provided liability coverage for situations in which third-parties sustained injuries resulting from the custom feeding operation, e.g., "if a person is injured operating farm machinery on the custom-feeding premises, or contracts a food-borne illness traceable to the custom-feeding operation," or custom-fed cattle become loose and damage a neighbor's field, as opposed to property coverage for damages sustained to the cattle in the insured's "care, custody or control." Id. at *5. Thus, the Gaza Beef court found the doctrine of reasonable expectations inapplicable because the policy did not contain ambiguous language or constitute the "extreme situation" of a policy containing a "hidden exclusion." Id. (quoting Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 49 (Minn. 2008)).

The Minnesota Court of Appeals's opinion in Gaza Beef is both persuasive and the best evidence of Minnesota law applicable to this case.[5] In light of Gaza Beef, we conclude that the district court erred in its application of Minnesota law. The Custom Feeding Endorsement provides certain coverage for casualty losses to third parties that otherwise would have been excluded by Exclusion 6.a (the "custom farming" exclusion). It does not, however, restore all the coverage excluded by Exclusion 5 (the "care, custody or control" exclusion). Gaza Beef, 2011 WL 3654533, at *4-5; see also Mich. Millers Mut. Ins. Co. v. DG & G Co., 569 F.3d 807, 812 (8th Cir. 2009) (holding that coverage under a commercial general liability policy for damage to cotton ginned by insured and owned by third-party was excluded by the policy's "care, custody, or control" exclusion); In re SRC Holding Corp., 545 F.3d 661, 670 (8th Cir. 2008) (rejecting contention that endorsement irreconcilably conflicted with another endorsement when the endorsements did not apply to exact same scope of coverage); Ferguson v. Allied Mut. Ins. Co., 512 N.W.2d 296, 300 (Iowa 1994) (holding that endorsement allowing limited additional coverage for custom livestock feeding operation did not nullify broad exclusion for property damaged while "in the care of the insured"). To the contrary, the endorsement expressly limits its application to Exclusion 6.a. and thus does not alter that portion of the policy which excludes coverage for property within the insured's care, custody, or control.[6] Gaza

---

[5] "Although federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive and should be followed when they are the best evidence of state law." Baxter Int'l, Inc. v. Morris, 976 F.2d 1189, 1196 (8th Cir. 1992) (citation omitted). Further, while unpublished decisions "are not precedential," Minn. Stat. § 480A.08, subd. 3(c), they "can be of persuasive value." Dynamic Air, Inc. v. Bloch, 502 N.W.2d 796, 800 (Minn. Ct. App. 1993).

[6] Because the Custom Feeding Endorsement does provide liability coverage for losses that otherwise would have been excluded by Exclusion 6.a., Schwieger's argument under the illusory coverage doctrine fails. See In re SRC Holding Corp., 545 F.3d at 671 (noting that, under the illusory coverage doctrine, "'liability insurance contracts should, if possible, be construed so as not to be a delusion to the

-10-

Beef, 2011 WL 3654533, at *4. Accordingly, because the record establishes that Schwieger's cattle were under Voss's care, custody, and control when they were damaged, the policy does not provide coverage for Schwieger's claimed loss.[5]

## IV.

The judgment is reversed and the case is remanded for entry of summary judgment in favor of Grinnell.

_____

---

insured'") (quoting Jostens, Inc. v. Northfield Ins. Co., 527 N.W.2d 116, 118) (Minn. Ct. App. 1995)).

[5]Because we have concluded that the "care, custody or control" exclusion precludes all of Schwieger's claims, we need not consider the parties' additional arguments relating to the "performance guarantees" exclusion.

-11-