# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2259
_____

Cincinnati Insurance Company

*Plaintiff - Appellee*

v.

Rymer Companies, LLC, also known as Rymer Companies, Inc.;
Cannon Falls Mall, Inc.

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 15, 2022
Filed: July 28, 2022
_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Rymer Companies, LLC, and Cannon Falls Mall (collectively, "Rymer") claim their insurance policy (the "Policy") with Cincinnati Insurance Company ("Cincinnati") covers the costs of replacing the roof on a shopping mall owned by Rymer. Rymer appeals the district court's grant of summary judgment in favor of

Cincinnati and its denial of Rymer's motion for summary judgment. We reverse and remand.

## I. Background[1]

Rymer owns and operates a shopping mall in Cannon Falls, Minnesota. Cincinnati insured the mall. After a tornado damaged the mall's roof,[2] Rymer submitted an insurance claim for the damage and a statement of proof of loss that included a $1.3 million estimate for total replacement of the mall's roof. Cincinnati determined the total loss to the mall was only $10,702.40, finding deterioration and water damage of the roof pre-existed the tornado. Rymer does not dispute that the roof was in a "wet" condition before the tornado but nonetheless asserts it was fully operational.

Cincinnati filed this lawsuit seeking a declaratory judgment as to its obligations under the Policy. Rymer filed counterclaims alleging breach of contract and seeking a declaratory judgment and a compelled appraisal. The parties agreed to appoint an appraisal panel to determine the scope of the damage and the amount of loss to the mall. The panel rejected Rymer's claim for full replacement and determined the tornado caused $23,226 in damages to the roof. The appraisal award did not specify how the award was calculated, but a panel member informed Rymer that the award was for "localized repairs to the areas where cap flashing was displace[d]" and "was calculated at the lineal footage of the cap flashing going into the field of the roof 10ft."

---

[1]In accordance with the summary judgment standard, we outline the facts in the light most favorable to Rymer. *See Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697, 700 (8th Cir. 2012).

[2]Cincinnati does not concede the mall experienced a tornado as opposed to a windstorm; however, Cincinnati used "tornado" in its briefing for semantic ease.

Rymer applied for a building permit to replace flashing and 100 square feet of roof within the "existing saturaturated [sic] roof system." Goodhue County denied the application, finding the proposed repairs did not satisfy the manufacturer's requirements or the Minnesota Building Code (the "Building Code").[3] The County did not cite a particular provision of the Building Code, but the district court determined, based on a letter the County sent to the appraisal panel, that the denial was based on a provision of the Building Code prohibiting a "roof recover" of water-soaked roofs. *See* Bldg. Code § 1511.3.1.1. The provision states: "A roof recover shall not be permitted where . . . the existing roof or roof covering is water soaked or has deteriorated to the point that the existing roof or roof covering is not adequate as a base for additional roofing." *Id*. (formatting altered). A "roof recover" is defined as the "process of installing an additional roof recovering over a prepared existing roof covering without removing the existing roof covering." *Id.* § 202 (formatting altered). The County determined Rymer's requested partial repairs were a roof recover.[4]

Because the County rejected Rymer's request for partial repairs, Rymer demanded Cincinnati pay to completely replace the roof. The parties filed cross-motions for summary judgment. Rymer argued the "ordinance or law" endorsement under the Policy covered total replacement of the roof. The ordinance-or-law endorsement states:

(1) If a Covered Cause of Loss occurs to a covered building or structure, resulting in the enforcement of an ordinance or law that:

. . .

---

[3]The Building Code is not statutory but a recommended code that has been adopted by Goodhue County. Accordingly, we refer to its provisions as "ordinances."

[4]We assume without deciding that the requested repairs were a roof recover under the Building Code. This determination may require further factual development not necessary to decide the issue before us.

-3-

(b)    Regulates the construction or repair of the buildings or structures, or establishes building, zoning, or land use requirements at the 'premises;' and

(c)    Is in force at the time that 'loss' is sustained;

[Cincinnati] will pay:

. . .

(c)    The increased cost to:

. . .

2)    Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required; when the increased cost is a consequence of enforcement of a building, zoning or land use ordinance or law . . . .

The district court granted summary judgment in favor of Cincinnati and denied Rymer's motion for summary judgment, holding the ordinance-or-law endorsement did not apply because the damage from the tornado did not "result[] in" enforcement of § 1511.3.1.1 of the Building Code. Rymer appeals.

## II. Analysis

We review the district court's summary judgment order de novo, viewing the evidence in the light most favorable to Rymer. *See Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697, 700 (8th Cir. 2012). We will affirm the district court's grant of summary judgment only if there is no genuine dispute of material fact and Cincinnati is entitled to judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56(a).

The parties agree this appeal revolves around a single issue: whether the Policy's ordinance-or-law endorsement covers total replacement cost for the mall's roof. It is undisputed Minnesota law governs our interpretation of the Policy. *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). Where Minnesota law is unclear, "[w]e must predict how the Supreme Court of Minnesota

would rule[.]" *Netherlands Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) (quoting *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012)).

Under Minnesota law, the purpose of policy interpretation is to give effect to the parties' intent. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). Unambiguous policy language must be given its plain and ordinary meaning. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986). Ambiguities in policy language should be resolved in favor of the insured. *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009).

We first note that where an endorsement conflicts with the body of a policy, the endorsement governs. *Schwieger*, 685 F.3d at 701 (citing *Bobich v. Oja,* 104 N.W.2d 19, 24 (Minn. 1960)). Thus, if the language of an applicable endorsement covers a loss, the loss is covered regardless of whether the body of the policy excludes such coverage. *See id.* Here, viewing the facts in the light most favorable to Rymer, we conclude the endorsement covers replacement of the roof.

Coverage under the endorsement is triggered "[i]f a Covered Cause of Loss occurs to a covered building or structure, *resulting in* the enforcement of an ordinance or law that" otherwise satisfies the endorsement. (emphasis added). The parties dispute the meaning of "resulting in" under the endorsement. The district court concluded "resulting in" requires at least but-for causation and insinuated it might require "something more than *literal* but-for causation." (quoting *Capitol Indem. Corp. v. Ashanti*, 28 F. Supp. 3d 877, 883 (D. Minn. 2014)). The district court did not explain what "something more" meant but held Rymer did not carry its burden of showing but-for causation. We disagree. We hold the tornado was a but-for cause of the County's enforcement of the ordinance. We also hold that even if "resulting in" requires "something more than literal but-for causation," the endorsement still covers the cost of replacing the mall's roof.

Cincinnati relies on the fact that the tornado did not cause the roof's water-soaked condition. But a roof's water-soaked condition is simply an *element* of the subject ordinance. A violation of the ordinance requires *both* (1) a water-soaked roof and (2) a "roof recover" (i.e., partial repairs). Bldg. Code § 1511.3.1.1, § 202. The ordinance-or-law endorsement does not require the covered cause of loss (the tornado) to trigger every element of the subject ordinance. Instead, the causal relationship required by the endorsement is between the covered cause of loss and the "*enforcement* of an ordinance." (emphasis added).

Here, the causal link between the tornado and the enforcement of § 1511.3.1.1 is clear—the ordinance would not have been enforced "but for" the tornado. But-for causation only requires a showing that in the absence of the former event, the latter would not have occurred. *See Micks v. Gurstel L. Firm, P.C.*, 365 F. Supp. 3d 961, 976 (D. Minn. 2019). Without the tornado, there would have been no application for the County to deny under § 1511.3.1.1—Rymer's roof would not have been damaged and Rymer would not have filed its application for partial repairs. In other words, without the tornado, the County would not have enforced § 1511.3.1.1 against Rymer. Thus, the district court erred in concluding Rymer failed to show but-for causation between the tornado and the County's enforcement of § 1511.3.1.1.

It is possible the Minnesota Supreme Court would interpret "resulting in" here as requiring no more than but-for causation. *See id.* ("Where there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality." (quoting *Burrage v. United States*, 571 U.S. 204, 212 (2014)); *see also Eng'g & Constr. Innovations, Inc. v. W. Nat'l Mut. Ins. Co.,* No. A12-1785, 2013 WL 2460400, at *6 (Minn. Ct. App. June 10, 2013) (unpublished) (interpreting "resulted in" as only requiring a causal connection and not proximate cause). But even if "something more than literal but-for causation" is required, Rymer has also shown the County's enforcement of § 1511.3.1.1 was a "natural and reasonable incident or consequence" of and had a "reasonably close causal

relationship" with the tornado. *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741, 743 (Minn. 2005) (quoting *N. River Ins. Co. v. Dairyland Ins. Co.*, 346 N.W.2d 109, 114 (Minn. 1984)) (interpreting "arising out of" in an insurance policy); *In re. Minn. Power's Petition for Approval of EnergyForward Res. Package*, 958 N.W.2d 339, 348–49 (Minn. 2021) (quoting *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004)) (interpreting "resulting from" under Minn. Stat. § 116D.04).[5]

Significantly, § 1511.3.1.1 does not prohibit nor require immediate replacement of water-soaked roofs; instead, it prohibits partial repair of such roofs. And Cincinnati cites no other section of the Building Code the roof violated before the tornado. Thus, before the tornado, there was nothing for the County to enforce. Then, the tornado changed things. The tornado caused damage to the roof covered by the Policy. When Rymer requested to repair that damage, the ordinance was triggered.[6] The tornado left the roof in need of the very thing prohibited by the ordinance—partial repairs. And it was not until Rymer attempted to make such repairs that the County had grounds to enforce the ordinance. Thus, the tornado had a close causal relationship with the County's enforcement of § 1511.3.1.1. Or, in other words, "a Covered Cause of Loss occur[ed] to a covered building or structure, resulting in the enforcement of an ordinance or law that . . . [r]egulates the construction or repair of the building[] . . . and . . . [wa]s in force at the time that 'loss' [wa]s sustained[.]"

---

[5]We note that in *In re. Minnesota*, the Minnesota Supreme Court distinguished "arising out of" as used in the insurance context from "resulting from" as used in a statute, noting "resulting from" has a "narrower causal connection standard" than "arising out of." 958 N.W.2d at 349 n.6. Regardless, we hold Rymer satisfies either standard.

[6]Cincinnati suggests the appraisal award was solely for damages to cap flashing and argues Rymer already repaired the damaged cap flashing legally without a permit. But Rymer presented evidence that the award also covered repairs to "the field of the roof" and that the County rejected such repairs. Thus, when viewed in the light most favorable to Rymer, the appraisal award covered the repairs that triggered the County's enforcement of the Building Code.

Our interpretation harmonizes with the general scheme of the endorsement. The endorsement covers "demolition of *undamaged* parts of a covered building" and pays for costs to "reconstruct or remodel *undamaged* portions" of the affected building. (emphasis added). We understand "undamaged portions" to mean parts of the building not physically damaged *by the covered cause of loss*.[7] So, the endorsement assumes the additional covered costs are for parts of the building not physically damaged by the covered cause of loss, as here.

Also telling are the endorsement's exclusions. The Policy excludes coverage for loss caused by enforcement of a law or ordinance related to a building's contamination with pollutants, fungi, rot, or bacteria. The Policy also excludes coverage for a loss caused by a law or ordinance with which the insured was "required to comply [] before the 'loss'" but "failed to comply." Thus, the endorsement considers that an insured should not be allowed to use the endorsement to bootstrap the cost of certain pre-existing conditions (pre-existing code violations, pollutants, fungi, rot and bacteria) to a covered loss. Notably absent from this list is a roof's water saturation. The Policy's exclusion of other kinds of laws or ordinances but not those concerning pre-existing water saturation underscores the validity of our interpretation. *See Weber v. Sentry Ins.*, 442 N.W.2d 164, 167 (Minn. Ct. App. 1989) ("The well-recognized rule of 'expressio unius est exclusio alterius' provides that the expression of specific things in a contract implies the exclusion of all not expressed." (citing *Anderson v. Twin City Rapid Transit Co.*, 84 N.W.2d 593, 599 (Minn. 1957))).

We are not persuaded by the out-of-circuit cases cited by Cincinnati in support of its interpretation. Each of these cases included an important fact missing here—

---

[7]Cincinnati effectively concedes this point by admitting that if the tornado had caused some (but not necessarily all) of the roof's water damage, the endorsement would "provide coverage for the cost to replace the portions of the roof that were 'undamaged' by the Tornado."

pre-existing violations of the building code. *See Sanderson v. First Liberty Ins. Corp.*, No. 8:16-cv-644, 2019 WL 2009332, at \*6 (N.D.N.Y. May 7, 2019) (unpublished) (noncompliant electrical work revealed by removing drywall after a burst water pipe); *Chattanooga Bank Assocs. v. Fid. & Deposit Co. of Md.*, 301 F. Supp. 2d 774, 776 (E.D. Tenn. 2004) (code violations discovered after fire damage); *St. Paul Fire & Marine Ins. Co. v. Darlak Motor Inns Inc.*, 3:97-cv-1559, 1999 WL 33755848, at \*1 (M.D. Pa. Mar. 9, 1999) (unpublished) (same); *St. George Tower v. Ins. Co. of Greater N.Y.*, 139 A.D.3d 200, 201–02 (N.Y. App. Div. 2016) (noncompliant concrete slabs discovered while repairing water damage). Here, the roof did not violate § 1511.3.1.1 before the tornado.

This case is more analogous to *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159 (3d Cir. 2006). In *Regents*, a fire damaged a building on the campus of Mercersburg College. *Id.* at 161–62. As a result, Mercersburg was required to make several accessibility upgrades under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101–12213. *Id.* at 163–65. Because the building pre-existed the ADA, the ADA had not before required Mercersburg to make the subject accessibility upgrades. *See id.* at 168–69. But when the fire caused Mercersburg to make alterations, it was required to make the alterations in a manner "readily accessible to and usable by individuals with disabilities" "to the maximum extent feasible." *Id.* at 164–65, 169 (quoting 42 U.S.C. § 12183(a)).

Mercersburg was faced with an analogous situation to the one at hand. It owned a structure that had not been in violation of the law in question. Then, a loss occurred. The covered repairs for such loss triggered the subject law, requiring Mercersburg to alter or replace parts of the building not necessarily damaged by the cause of loss. The Third Circuit held the insurer liable for the ADA alterations under

a similar ordinance-or-law endorsement,[8] even though the need for the alterations was "not directly caused by the fire." *Id.* at 170. As in *Regents*, Rymer's covered loss requires repairs that cannot be made without additional costs imposed by a law that was not enforceable until the covered loss necessitated repairs. We apply the same logic as the Third Circuit and hold the ordinance-or-law endorsement here covers the additional costs[9] imposed by § 1511.3.1.1.[10]

## III. Conclusion

For the reasons stated herein, we reverse the district court's entry of summary judgment for Cincinnati and its denial of Rymer's motion for summary judgment

---

[8]The endorsement provided:

> If a Covered Cause of Loss occurs to covered Building property[,] . . . we will pay for loss to the undamaged portion of the building caused by enforcement of any ordinance or law that: (a) requires demolition of parts of the same property not damaged by a Covered Cause of Loss; (b) regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and (c) is in force at the time of loss.

*Regents*, 458 F.3d at 162 (alterations in original).

[9]The amount of additional costs imposed by § 1511.3.1.1 is an issue of fact not before us.

[10]Even if Cincinnati's interpretation of the endorsement is reasonable, it can only create ambiguity because we hold the above interpretation is also (at least) reasonable. *See Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) ("Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations."). Because ambiguities are resolved in favor of the insured, *Wozniak Travel*, 762 N.W.2d at 575, we would resolve interpretation of the endorsement in favor of Rymer.

and remand for further proceedings, including any necessary fact finding, consistent with this opinion.[11]

––––––––––––––––––––––––––––––

[11]We hold only that Cincinnati is not entitled to summary judgment at this stage on the basis that the damage from the tornado did not "result[] in" enforcement of Building Code § 1511.3.1.1 and that it was improper to deny summary judgment to Rymer based on this same reasoning. We do not address what facts may or may not be proven on remand and what effect, if any, those findings may have on causation or the application of § 1511.3.1.1.