# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3356
_____

Cincinnati Insurance Company

*Plaintiff - Appellee*

v.

Rymer Companies, LLC, also known as Rymer Companies, Inc.; Cannon Falls
Mall, Inc.

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2025
Filed: March 27, 2026
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

In this winding dispute about insurance coverage for tornado damage, the question is whether the district court[1] could ask for clarification of an appraisal award. For Minnesota policies, the answer is yes.

_____

    [1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

## I.

When a tornado swept through Goodhue County, Minnesota, it damaged the roof of a mall owned by Rymer Companies, LLC. The roof was already in rough shape from water damage, which created a question about who should pay for the repairs. Cincinnati Insurance Company thought its responsibility under Rymer's policy extended no further than the tornado damage, which it estimated to be around $10,000. Rymer's position was that the mall needed a new roof, which could cost as much as $1.7 million.

Rather than get stuck with a huge bill, Cincinnati filed a declaratory-judgment action against Rymer in federal court. As required by the insurance policy, the parties selected an appraisal panel to decide what Cincinnati owed. It consisted of three members: one appraiser chosen by each of the parties and a third, the umpire, who was jointly selected. It unanimously awarded $23,226 for the "[m]all roof repair."

Thinking that the dispute was over and getting a building permit was the next step, Rymer applied for one. Goodhue County, however, would not issue a permit for just a partial repair, which made the project far more expensive than the parties thought. Fully completing it, including remedying the preexisting damage, would require a new roof. Otherwise, Rymer would not receive a permit to complete *any* repairs. *See* Minn. Bldg. Code § 1511.3.1.1.

Rymer's only real choice was to continue the litigation. The hope was that the permit requirement, which came from a straightforward application of Minnesota's Building Code, qualified as an "ordinance or law" that "establishe[d] building . . . requirements" that "increased [the] cost" to "[r]epair or reconstruct damaged portions of th[e] building." Appropriately titled the "Ordinance or Law" provision, this part of the policy required Cincinnati to "pay" those costs when the "Covered Cause of Loss . . . result[ed] in the enforcement of [the] ordinance or law." In its grant of summary judgment to Cincinnati, the district court concluded that any

increased costs were Rymer's responsibility because they "result[ed]" from the preexisting water damage, not the tornado. The requisite causal link to the "Covered Cause of Loss," in other words, was missing.

On appeal, we took a more forgiving view of how close the link had to be. It required only that "the tornado [be] a but-for cause of the [c]ounty's enforcement of the ordinance." *Cincinnati Ins. Co. v. Rymer Cos.*, 41 F.4th 1026, 1029 (8th Cir. 2022). Here, it qualified as one because, without it, Rymer would never have "filed its application" for roof repairs. *Id.* With other unresolved issues, however, we sent the case back to the district court.

How to interpret the appraisal award was one of them. If it included a repair to the roof's surface, then the ordinance-or-law provision applied. But if it covered only the replacement of cap flashing, a protective waterproof barrier installed where the roof touches an outside wall, then Rymer would be out of luck. The repair would not require a permit, so the tornado would not have "result[ed]" in the enforcement of Minnesota's building code. *See id.* at 1030 n.6.

The ambiguity in the award prompted the district court to request clarification from the appraisal panel. In a series of three questions, it asked for a "specific[] determin[ation] whether the loss [it] previously found included any repair or involvement of the roof itself." Only if the answer was yes would the panel need to calculate the cost of a new roof.

Unlike the first time, the panel could not reach a consensus. The umpire sided with Cincinnati's appraiser, who thought the award did *not* include repairs to the roof's surface. Rymer, on the other hand, thought there was only one right answer: given the disparity between the size of the award and the cost of the flashing repairs, it must have covered more. The only possible explanation for the "irreconcilable" clarification, at least in its view, was "fraud, misfeasance, malfeasance, or wrongdoing by appraisal panel members." To find out whether any occurred, the district court allowed Rymer to depose the appraisers, but only for the limited

purpose of deciding whether to vacate the award. Unfortunately, the depositions only added to the confusion. The umpire contradicted his earlier vote by admitting that the original award *included* 10 feet of roof-surface repairs.

From there, Rymer moved for summary judgment. It wanted the district court to rely on the umpire's later statements, rather than the written clarification, to revise the award. Cincinnati also requested summary judgment, but its position was that the lack of any wrongdoing made the clarification enforceable.

Relying on several Minnesota cases, the district court sided with Cincinnati. As it explained, the two types of post-award statements served different functions. The first, the clarification, offered a way to understand a preexisting award. The other, the later statement of the umpire, was a way of rooting out misbehavior by the panel. Explaining an ambiguous award, in other words, took all three appraisers acting together, but questioning its validity could be done by only one. Having opted not to challenge it by filing a motion to vacate, Rymer was stuck with the clarified award.

II.

We review the grant of summary judgment de novo. *See Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020). It is proper when there is "no genuine issue of material fact" and "the evidence, viewed in a light most favorable to the nonmoving party, shows . . . the [party seeking it] is entitled to judgment as a matter of law." *Id.* (citation omitted).

Everyone agrees that Minnesota law governs this diversity case. *See, e.g.*, *Ewald v. Wal-Mart Stores, Inc.*, 139 F.3d 619, 621 (8th Cir. 1998). The Minnesota Supreme Court has not confronted a situation like this one, so our task "is to predict what it would do." *Ideus v. Teva Pharms. USA, Inc.*, 986 F.3d 1098, 1101 (8th Cir. 2021).

## A.

Sometimes appraisal awards are not as clear as they should be. Here, the district court dealt with the ambiguity by sending it back for clarification. Although the Minnesota Supreme Court has never formally recognized the practice, it has been occurring for years.[2]

The function of an appraisal panel is to decide the "amount of loss[,] . . . not construe the policy or decide whether the insurer should pay." *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (citation omitted); *see Cedar Bluff Townhome Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, 857 N.W.2d 290, 296 (Minn. 2014) (explaining that Minnesota courts "give deference to the appraisal panel's factual determination as to the amount of loss," like how much damage a hailstorm caused). Included within the scope of an appraisal are "determination[s] of causation." *Quade*, 814 N.W.2d at 707. In *Quade*, it was whether the wind had damaged a roof. *See id.* Here, it is whether a tornado did. Each involved two potential causes: a preexisting one and a covered one.

The panel's first award in this case left that question open by not specifying what damaged which parts of the mall roof. Rather than step out of its lane and decide the question on its own, the district court believed the only way to get a usable award was to ask for clarification. This back-and-forth is a routine part of the legal process. Courts often "remand for findings" before "decid[ing] the validity of the

---

[2]For a long time, the Minnesota Court of Appeals thought the power came from Minnesota's version of the Uniform Arbitration Act. *See, e.g.*, *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 398 (Minn. Ct. App. 2010) ("Appraisal decisions are subject to . . . the arbitration statute."); *David A. Brooks Enters., Inc. v. First Sys. Agencies*, 370 N.W.2d 434, 435 (Minn. Ct. App. 1985); *see also Herll v. Auto-Owners Ins. Co.*, 879 F.3d 293, 295 (8th Cir. 2018). No longer, however, given a recent Minnesota Supreme Court decision ruling out the possibility. *See Oliver v. State Farm Fire & Cas. Ins. Co.*, 939 N.W.2d 749, 752–53 (Minn. 2020) (holding that the Uniform Arbitration Act does not apply to appraisals).

lower court's order." *State v. Kvam*, 336 N.W.2d 525, 528 (Minn. 1983); *see Stieler v. Stieler*, 70 N.W.2d 127, 131 (Minn. 1955) (explaining that "where [a judgment], because of its language, . . . is of doubtful meaning or open to diverse constructions, it may be clarified by the tribunal which ordered it"). Used here, it is a way of protecting the appraisal process itself. It ensures the subject-matter experts are the ones deciding the "amount of loss," in line with what Minnesota insurance contracts require, *Quade*, 814 N.W.2d at 706, not the courts, which make coverage decisions, *see State Farm Ins. Co. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992).

The only other alternative, vacatur of the panel's award, does not work in this situation. An appraisal award cannot be vacated under Minnesota law "unless it clearly appears that it was the result of fraud or because of some misfeasance or malfeasance or wrongdoing on the part of the appraisers." *Mork v. Eureka-Sec. Fire & Marine Ins. Co.*, 42 N.W.2d 33, 38 (Minn. 1950); *see McQuaid Mkt. House Co. v. Home Ins. Co.*, 180 N.W. 97, 98 (Minn. 1920) (holding that courts may not "lightly set aside" appraisal awards). "Mere inadequacy," on the other hand, "is not [a] sufficient ground for setting it aside," at least without "inadequacy so gross as to justify invalidation on the ground of fraud." *Mork*, 42 N.W.2d at 38–39; *see Sanitary Farm Dairies v. Gammel*, 195 F.2d 106, 114 (8th Cir. 1952) ("[A]n appraisal result cannot be judicially examined [for] adequacy or inadequacy of amount but only as an issue of *moral infirmity*, in that it may lack integrity of undertaking, or . . . it involves errors . . . so gross as to evidence or establish fraud . . . ." (emphasis added) (citation omitted)). No one points to anything approaching fraud-like gross inadequacy, "moral infirmity," or "moral taint." *Id.*

With vacatur off the table and the loss amount a matter for the appraisers, only one real choice remained: clarification of the award. Provided with just a dollar amount for a "[m]all roof repair," the district court reasonably asked the panel to clarify its decision. After all, it was facing a legal-coverage question under the ordinance-or-law provision that depended on what the award included. *See, e.g.*, *Herll*, 879 F.3d at 296 (remanding an award when it was unclear whether it covered damage to the windows of a house). Did "[m]all roof repair" involve work on the

-6-

surface of the roof or just replacing the flashing?  For the parties, the answer was the difference between a $23,226 insurance payment and one potentially 75 times greater.

B.

One loose end remains.  When the district court asked for clarification, a majority of the panel wrote that none of the damage was to the roof's surface, which meant that the dollar amount of the award would remain the same.  Unhappy with the response because it ruled out a new roof, Rymer wanted to question the appraisers itself.

In granting the request, the district court made clear that the purpose of the extra discovery was to uncover potential "fraud, misfeasance, malfeasance, or wrongdoing," not "interpret the scope of the appraisal award."  Undaunted, Rymer argued in its summary-judgment motion that the umpire's statement that the award contemplated "a ten-foot repair" into the roof's surface overrode the written clarification.

Summary judgment ended the debate, when the district court decided, consistent with its earlier ruling, that the written clarification won out when it came to deciding the type and amount of damage.  Under Minnesota law, appraiser testimony plays a role in discovering wrongdoing, but not in "explaining or altering the award." *Levine v. Lancashire Ins. Co.*, 68 N.W. 855, 858 (Minn. 1896); *cf. Mork*, 42 N.W.2d at 38 (permitting vacatur when an award "was the result of fraud . . . or wrongdoing on the part of the appraisers").  It is an all-or-nothing choice: either use it to support vacatur or not at all.  *See Levine*, 68 N.W. at 858.

As the district court noted, Rymer never "moved to vacate [any part of] the award."  *See Quinn v. St. Louis County*, 653 F.3d 745, 752 n.6 (8th Cir. 2011) (explaining that a party waives an argument by not presenting it to the district court).  It wants the award to stand, but for the umpire's testimony to expand what it covers,

-7-

regardless of the clarification by the panel.  Minnesota law does not allow Rymer to have it both ways.

III.

We accordingly affirm the judgment of the district court and deny Cincinnati's motion to strike a witness affidavit as moot.

_____